# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA, ORLANDO DIVISION

| | |
|---|---|
| KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof,<br><br>    Plaintiff,<br><br>v.<br><br>LOCKHEED MARTIN CORPORATION; UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD.; UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC; and HSW ENGINEERING, INC.<br><br>    Defendants. | Case No.:<br><br>**LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL** |

## LOCKHEED MARTIN CORPORATION'S NOTICE OF REMOVAL

Defendant Lockheed Martin Corporation removes to this Court *Vandestreek v. Lockheed Martin Corp.*, No. 2021-CA-008041-O (Fla. 9th Cir. Ct. 2021) (the "State Court Action"). Jurisdiction exists under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as amended by the Removal Clarification Act of 2011.

## INTRODUCTION

1. Lockheed Martin is the United States Government's top defense contractor. For at least a decade, the U.S. Government has subcontracted more of its essential work to Lockheed Martin than any other company. This relationship traces back more than a century to military aviation support The Glen L. Martin Company provided in World War I.

2. Since the 1950s, Lockheed Martin and its predecessors have performed many of their essential U.S. Government contracting services from the Sand Lake Road Complex ("SLRC") in Orlando—a location selected for its proximity to military operations at Cape Canaveral. At SLRC, Lockheed Martin has produced Pershing ballistic missiles deployed during the Cold War, Bullpup missiles deployed during the Vietnam conflict, Patriot and Hellfire missile systems deployed in the Gulf War, targeting and navigation systems deployed in multiple conflicts, and myriad other missile and fire-control systems ordered and deployed by the U.S. military.

3. These operations—all of which have been subject to exacting Government scrutiny and control—are the focus of this toxic-tort case. Plaintiff claims that operations at SLRC exposed Daniel Vandestreek to hazardous concentrations of various substances and caused his death.

4. Plaintiff is incorrect, but her allegations entitle Lockheed Martin to a merits determination in federal court. There is no aspect of SLRC's historic or current operations that the Plaintiff has carved out of her Complaint, which targets more than 60 years of activities, multiple substances, and multiple exposure pathways.

5. Because the wide net Plaintiff has misguidedly cast encompasses operations that relate directly to Lockheed Martin's core work for the Government and consequently implicates multiple federal defenses, Lockheed Martin is entitled to have the claims against it adjudicated in federal court. Removal is therefore proper under 28 U.S.C. § 1442(a)(1).

## PROCEDURAL HISTORY

6. Plaintiff filed the Complaint in the Ninth Judicial Circuit, in Orange County, Florida on August 10, 2021. Plaintiff served Lockheed Martin on August 24.

7. Removal is therefore timely under 28 U.S.C. § 1446(b)(1) because Lockheed Martin files this notice of removal within 30 days of being served on August 24.

8. In accordance with Local Rule 1.06 and pursuant to 28 U.S.C. § 1446(a), Lockheed Martin contemporaneously submits true and legible copies of all pleadings and papers on file with the state court. Lockheed Martin has not yet filed an answer or motion to dismiss in the State Court Action, nor, as of the date of this Notice, has any other Defendant.

9. Pursuant to 28 U.S.C. § 1446(d), Lockheed Martin is serving written notice of the removal of this action on Plaintiff's counsel and counsel for all Defendants. A copy of that notice will be promptly filed with the Clerk of the Ninth Judicial Circuit.

10. Venue is proper because Lockheed Martin is removing the State Court Action from the Ninth Judicial Circuit, in and for Orange County, which is in the Orlando Division of the Middle District. *See* Local Rule 1.04(a); 28 U.S.C. § 1446(a).

## BACKGROUND

### I. Plaintiff's claims

11. This is a toxic-tort case brought on behalf of an individual who worked near SLRC and was allegedly exposed to toxic substances as a result.

12. Plaintiff focuses on SLRC's weapons-manufacturing history[1] and contends that the work at SLRC involved the use of "highly toxic contaminants." (Compl. ¶¶ 10, 12.) According to Plaintiff, Lockheed Martin's handling, storage, generation, use, emission, and disposal of those substances exposed Daniel Vandestreek to hazardous chemical substances and consequently harmed him. (*See, e.g.*, *id.* ¶¶ 9–11.) Plaintiff further claims that environmental remediation activities conducted at SLRC exacerbated these alleged exposures. (*Id.* ¶¶ 14–21.)

13. Plaintiff repeatedly states that her claims are based on historic SLRC operations and operations ongoing at the time Vandestreek allegedly worked near SLRC.[2] Plaintiff also acknowledges that SLRC's operations include manufacturing weapons and artillery, and Plaintiff alleges that those operations resulted in the emission of hazardous pollutants. *See, e. g., id.* ¶¶ 12, 23.

---

[1] *See, e.g.*, Compl. ¶ 12 ("In December of 1957, Lockheed Martin opened its Orlando Division plant located at 5600 Sand Lake Road, and production began on missile projects such as Pershing, Bullpup, Lacrosse, Sprint, and Hellfire. Between 1958 and 1996, Copperhead, Hellfire, and Pershing missiles were produced and tested.").

[2] *See, e.g., id.* ¶18 ("The Defendants deliberate indifference to human health caused persons in the vicinity of the SLRC, and specifically Daniel Vandestreek, to inhale, ingest, and come into dermal contact with . . . contaminants generated and released by the continued operations at the Sand Lake Road Complex."); ¶ 19 ("While remediation efforts were ongoing for over the last two decades, Lockheed simultaneously continued its operations at the Sand Lake Road Complex, resulting in the continued release of additional toxic contaminants and toxic waste, which further increased and exacerbated Daniel Vandestreek's exposure to these harmful chemicals."); ¶ 23 ("Lockheed's operations involve the manufacturing of heavy weaponry and artillery, wherein it handled, stored, utilized, generated, emitted, discharged, and disposed of highly toxic contaminants and volatile organic compounds. These operations continue to this day, and result in the generation and emission of numerous hazardous air pollutants and volatile organic compounds each year."); ¶ 33 (alleging harm due to "contaminants generated and released by the continued operations at the Sand Lake Road Complex").

## II.   Operations at SLRC

14. Lockheed Martin is one of the United States Government's largest private defense contractors. It has repeatedly held the number-one position on the U.S. General Services Administration's Top 100 Contractors Report. (Leckie Decl. ¶ 3.)

15. Lockheed Martin and its predecessors have operated SLRC since the late 1950s. The complex was originally run by The Martin Company, which through merger was succeeded by Martin Marietta Corporation in 1961. In 1994, Martin Marietta and Lockheed Corporation agreed to combine to form Lockheed Martin Corporation. (*Id.* ¶ 4.)

16. Lockheed Martin and its predecessors have consistently used operations at SLRC to satisfy their obligations to the United States under procurement and other contracts. These contracts required the production of missiles, fire-control systems, and other equipment for the U.S. military. (*Id.* ¶ 5.)

17. Lockheed Martin's major missile programs and related manufacturing contracts have always been originally designed for the U.S. Department of Defense and subject to detailed production specifications, to which Lockheed Martin has adhered. (*Id.* ¶ 6.)

18. In many contracts, the U.S. Government has had direct oversight of the materials used to manufacture the missiles. Some contracts provided for Government indemnification under Public Law 85-804 for unusually hazardous risks, including

risks relating to toxic properties of chemicals utilized for the performance of the contracts. (*Id.* ¶ 7.)

19. Major missile programs that involved missile manufacturing contracts performed at SLRC include the Bullpup, Pershing, Sprint, Patriot, and Hellfire missile systems. (*Id.* ¶ 8.)

20. In all of these missile programs, U.S. Department of Defense representatives have inspected and tested the subcomponents at SLRC prior to acceptance to ensure compliance with all military specifications. The Department of Defense has also frequently provided Lockheed Martin with government furnished equipment ("GFE") to help carry out these contracts. The Defense Contract Management Agency ("DCMA") and Defense Contract Audit Agency "(DCAA") maintain a permanent embedded presence at SLRC. (*Id.* ¶ 9.)

21. Manufacturing, testing, and other processes undertaken at SLRC necessarily result in emissions of substances relating to these operations. Lockheed Martin is not aware of any instance in which it knew of a danger related to its manufacturing that was not also known to the U.S. Government. (*Id.* ¶ 10.)

22. Thus, through its procurement relationships with Lockheed Martin and its predecessors, the U.S. military has maintained an embedded oversight presence through DCMA and DCAA activity and has continually overseen the manufacture, performance, safety, maintenance, and mission-accomplishment of missile, fire-control, and other systems produced at SLRC. (*See id.* ¶ 11.)

## BASIS FOR JURISDICTION

23. This Court has subject matter jurisdiction pursuant to the federal officer removal statute, 28. U.S.C. § 1442(a)(1), as amended by the Removal Clarification Act of 2011. The acts forming the basis of Plaintiff's assertions were taken by Lockheed Martin or its predecessor companies pursuant to federal authority and under color of federal office. Lockheed Martin also has two colorable federal defenses.

24. Moreover, "Section 1442(a)(1) creates special ancillary jurisdiction over the state claims, and 'district court may take the entire case, even if it would not have jurisdiction over any of the claims against a codefendant.'" *Buchinger ex rel. Est. of Buchinger v. Garlock, Inc.*, No. 3:05-cv-118-RV-MD, 2005 WL 2338801, at *2 (N.D. Fla. Sept. 23, 2005) (quoting *Williams v. City of Atlanta,* 794 F.2d 624, 628 (11th Cir. 1986)).[3]

**I.   Lockheed Martin removes this case pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1).**

25. Federal officer removal allows a case to be removed to federal court even if the case could not have been filed there originally. The statute provides:

> **(a)** A civil action or criminal prosecution that is commenced in a State court and *that is against* or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> > **(1)** The United States or any agency thereof or *any officer (or any person acting under that officer)* of the United States or of any agency

---

[3] Lockheed Martin need not obtain the consent of the other Defendants to remove the action pursuant to Section 1442(a)(1). *See Buchinger*, 2005 WL 2338801, at *2 ("Section 1442(a) does not require GE to notify or obtain the consent of any other defendant in the action in order to remove the entire case to federal court.").

> thereof, in an official or individual capacity, *for or relating to any act under color of such office* or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1) (emphasis added).

26. To remove under this provision, a defendant must satisfy these criteria: (1) it must be a person within the meaning of the statute; (2) it must have been "acting under" the United States, its officers, or its agencies; (3) the actions at issue must have been performed for or must have related to any act under color of federal authority; and (4) it must have a colorable federal defense. *Caver v. C. Alabama Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017).

27. "[U]nlike the general removal statute, 28 U.S.C. § 1441, which must be strictly construed in favor of remand, the federal officer removal statute is 'liberally construed' in favor of granting federal officers and agencies (and those acting under federal officers and agencies) access to a federal forum in which to litigate the merits of defenses arising from their official duties." *In re 3M Combat Arms Earplug Products Liab. Litig.*, No. 3:19-md-2885, 2020 WL 365617, at *2 (N.D. Fla. Jan. 22, 2020) (citations omitted). Indeed, removal under Section 1442 is one of the few situations when a remand order may be appealed. 28 U.S.C. § 1447.

### A. Lockheed Martin is a person under Section 1442.

28. To remove under Section 1442, a defendant must show that it is a "person" under the statute. A "corporation constitutes a person for the purposes of determining whether federal officer removal jurisdiction exists." *Assocs. Rehab.*

*Recovery, Inc. v. Humana Med. Plan, Inc.*, 76 F. Supp. 3d 1388, 1391 (S.D. Fla. 2014). Thus, Lockheed Martin Corporation satisfies this requirement.

### B. Lockheed Martin "acted under" the United States, its officers, or its agencies.

29. Courts liberally construe and broadly interpret Section 1442's "acting under" requirement. *Caver*, 845 F.3d at 1142. To succeed on this prong, a defendant must act under the "subjection, guidance, or control" of the federal officer or agency. *Id.* at 1143. In making this determination, courts consider whether the defendant helped fulfill a "basic governmental task that the government otherwise would have had to perform." *Id.* at 1143.

30. Government contractors routinely meet this standard, as "[t]he assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." *See Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007) (discussing how "providing the Government with a product that it used to help conduct a war" can satisfy the "acting under" test (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387 (5th Cir. 1998))).

31. Here, Lockheed Martin and its predecessors are government contractors that have entered into numerous procurement contracts with the Government for the development and production of missiles and other defense systems. (Leckie Decl. ¶¶ 3, 5.) The U.S. military has overseen the manufacture, performance, safety, maintenance, and mission accomplishment of missiles and other defense systems

through its continuing purchases since the opening of the SLRC approximately 60 years ago. (*See id.* ¶ 11.) In many of those procurement contracts, the U.S. Government had direct insight and oversight of the actual materials used in the manufacturing process. (*Id.* ¶ 7.) As the military mandated that the production of such equipment conform to its specifications, Lockheed Martin has acted under the subjection, guidance, and control of the Government when fulfilling these contracts. (*Id.* ¶¶ 6, 7, 12.)

32. Additionally, the equipment produced by Lockheed Martin is anything but "off the shelf," but instead missiles and other systems that are developed for war efforts and other military use. Engaging in war and military exercises is a uniquely governmental function, and the products made by Lockheed Martin are complex systems produced for that purpose. If Lockheed Martin did not produce these systems, then the government would have to perform that task. As Plaintiff's allegations relate to Lockheed Martin's continued operations pursuant to government contracts, Lockheed Martin was acting under the U.S. Government when performing the acts Plaintiff alleges caused harm.

    **C.**   **Plaintiff's claims relate to actions Lockheed Martin and its predecessors have taken under color of federal authority.**

33. The next prong requires the Plaintiff's claims to relate to "any act under color" of federal authority. Prior to 2011, the federal officer removal statute required a defendant "to establish that the plaintiff's suit was *for* any act under color of federal office." *In re 3M Combat Arms Earplug Products Liab. Litig.*, 2020 WL 365617, at *4 n.13

(cleaned up). This "required a showing that the acts for which [defendants] were being sued occurred at least in part *because of* what they were asked to do by the government." *Id.*

34. In the Removal Clarification Act of 2011, however, Congress amended the statute to add the phrase "or relating to." *Caver*, 845 F.3d at 1144 n.8. "The phrase 'relating to' is broad and requires only 'a connection or association between the act in question and the federal office.'" *Id.* at 1144 (quoting *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015)).[4] This change expanded the scope of the statute and allowed more opportunities for federal officer removal. *Id.* at 1144 n.8.

35. "The hurdle erected by this requirement is quite low . . . ." *Id.* (quoting *Isaacson v. Dow Chem. Co.*, 517 F.3d 129, 137 (2d Cir. 2008)). And if there are disputes about "whether certain acts were specifically directed by the government," those disputes "are properly resolved by federal, not state, courts." *In re 3M Combat Arms Earplug Products Liab. Litig.*, 2020 WL 365617, at *4.

36. In the toxic-tort context, the "relating to" requirement is met if an alleged exposure is associated with manufacturing operations performed under color of law,

---

[4] Although some portions of *Caver* suggest that the Eleventh Circuit "stopped short of abandoning the 'causal connection' test," the holding and reasoning establish that the court "essentially implemented a connection rationale for removal." *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 944 (7th Cir. 2020) (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 292 (5th Cir. 2020) (en banc)). This is consistent with other circuit courts that have analyzed the federal officer removal statute after the 2011 amendment and likewise concluded that the more liberal "connection or association" test applies now. *See id.*; *Latiolais*, 951 F.3d at 296; *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017).

such as manufacturing efforts performed in support of Government wartime efforts. The Seventh Circuit's *Baker* decision is instructive. *See* 962 F.3d at 940.

37. In *Baker*, former residents of a public housing complex alleged that industrial manufacturing companies and their predecessors had "polluted the soil at and around their modern-day building, exposing the residents to hazardous substances like lead and arsenic." *Id*. at 940. The defendant companies removed under the federal officer statute, asserting that the plaintiffs' pollution allegations related to assistance their predecessors provided to the United States during World War II. *See id.* at 939–40 ("During World War II, the companies argue, the United States government directed them to produce certain materials for the military, supervised distribution of these goods, and controlled their ultimate usage."). After the district court remanded, the Seventh Circuit reversed, concluding that the defendants had sufficiently shown a connection or association between their wartime work for the government and the harm alleged. *Id.* at 943–45 ("Simply stated, the Companies did not need to allege that the complained-of conduct *itself* was at the behest of a federal agency. It is sufficient for the 'acting under' inquiry that the allegations are directed at the relationship between the Companies and the federal government." (cleaned up)).

38. Like the claims in *Baker*, Plaintiff's exposure allegations here are connected and associated with the manufacturing operations performed for and under the oversight of the Government. Plaintiff claims that those current and former operations, which include manufacturing of weapons and artillery, exposed Daniel Vandestreek to hazardous concentrations of substances emitted from SLRC. (*See*, e.g.,

Compl. ¶¶ 10, 18–19, 23, 33.) As discussed above, those operations were the direct result of procurement and other contracts between Lockheed Martin and the Government. (Leckie Decl. ¶ 6.) Plaintiff's claims are therefore "directed at the relationship between [Lockheed Martin] and the federal government," satisfying the "relating to" requirement. *See Baker*, 962 F.3d at 945 (quoting *Def. Ass'n of Phila.*, 790 F.3d 457, 470 (3d Cir. 2015)).

39. Even under the abrogated, more-limited causal nexus test, Lockheed Martin would have succeeded. Plaintiff's alleged harm was supposedly caused by Lockheed Martin's general operations and resulting emissions, which occurred ***because of*** Lockheed Martin entering into and performing under U.S. Government contracts. As a result, Lockheed Martin would have satisfied this prong under the causal-nexus test.

40. Additionally, the remediation allegations in the Complaint are intertwined with Lockheed Martin's government contract work. Manufacturing and testing weaponry necessarily produce emissions and wastes. (Leckie Decl. ¶ 10.) And it is because Lockheed Martin was complying with its government contracts that it produced, emitted, and remediated substances targeted by Plaintiff's claims. These allegations are therefore directly connected and associated with Lockheed Martin's acts under color of federal authority.

### D. Lockheed Martin has two colorable federal defenses: (1) the federal contractor defense and (2) derivative sovereign immunity.

41. The final requirement for federal officer removal is a colorable federal defense. The "defense need only be plausible; its ultimate validity is not to be determined at the time of removal." *Caver*, 845 F.3d at 1145 (quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996)). "Federal officer removal is [] an exception to the well-pleaded complaint rule, as 'the federal-question element is met if the defense depends on federal law.'" *Id.* (quoting *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999)). As the purpose of the removal statute is to allow the validity of the federal defense to be tried in federal court, the "law does not require that the removing defendant virtually win his case before it can be removed." *Id.*

#### 1. Lockheed Martin raises a colorable federal contractor defense.

42. The federal contractor defense addresses the potential for conflicts between state laws and unique federal interests. *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504–07 (1988). It provides a form of preemption that applies "when the imposition of liability under state law would create a 'significant conflict' with federal policy in an area of 'uniquely federal interest.'" *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1333 (11th Cir. 2003) (quoting *Boyle*, 487 U.S. at 507).

43. One such "area of uniquely federal interest is the procurement of equipment by the United States." *Id.* For that reason, "the enforcement of state tort law against military contractors must be preempted inasmuch as its operation would interfere with the exercise of discretion by government officials charged with making

these sensitive policy judgments," including the "selection of the appropriate design for military equipment." *Id.* at 1334 (citing *Boyle*, 487 U.S. at 511).

44. Although the federal contractor defense was first recognized in products liability cases, *see Boyle*, 487 U.S. at 502, the "analysis it requires is not designed to promote all-or-nothing rules regarding different classes of contract," *Hudgens*, 328 F.3d at 1334. In toxic-tort cases, the defense colorably applies to alleged exposures that relate to the manufacture of "any product supplied for government use so long as it conformed to the government's 'reasonably precise specifications.'" *See Baker*, 962 F.3d at 946.

45. Here, Lockheed Martin has a colorable federal contractor defense to some or all of Plaintiff's claims. Plaintiff attempts to impose tort liability under state law for, among other things, the way in which Lockheed Martin "handled, stored, utilized, generated, emitted, discharged, and disposed" of substances used in manufacturing operations performed at SLRC as part of procurement contracts with the Government. (*See, e.g.*, Compl. ¶ 23.) Lockheed Martin conducted these operations in conformance with detailed specifications created or approved by the Government, often using equipment provided by the Government, and subject to Government oversight and control over the process and material-selection. (Leckie Decl. ¶¶ 6, 7, 9.) Lockheed Martin is not aware of any instances in which it has known of a danger related to its manufacturing that was not also known to the U.S. Government. (*Id.* ¶ 10.)

46. Moreover, Plaintiff attempts to impose state tort liability for the U.S. Government's foundational decision to use SLRC for military manufacturing, asserting:

> [I]t was inappropriate to handle, store, use, generate, dispose, and emit highly toxic contaminants and volatile organic compounds near populated areas in that it constituted a nonnatural use of the SLRC which imposed an unusual and extraordinary risk of harm to Daniel Vandestreek as well as other persons and properties in the vicinity.

(Compl. ¶ 24.) Particularly given the history of SLRC's wartime contributions—and the tactical advantages provided by proximity to missile testing operations at Cape Canaveral—these and other claims place state tort law in conflict with sensitive, discretionary Government decisions regarding how and where to procure equipment and ordinance for the United States military.

47. Accordingly, Lockheed Martin has a colorable federal contractor defense.

### 2. Lockheed Martin raises a colorable derivative sovereign immunity defense.

48. Derivative sovereign immunity allows a contractor to share in the Government's immunity if the Government authorized an agency to perform a task and delegate it to a contractor, and the contractor then followed the Government's instructions. *Yearsley v. W.A. Ross Constr. Co.*, 309 U.S. 18, 21–22 (1940). In the recent Supreme Court case *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016), *as revised* (Feb. 9, 2016), the Court analyzed whether a federal contractor could have derivative immunity from TCPA claims and determined that contractors may share in the

Government's immunity, if the contractor follows the Government's instructions and does not violate federal law. *Id.* at 166–67.

49. Manufacturing missiles and other military defense systems is a government function that was validly delegated to Lockheed Martin pursuant to contracts with the U.S. Government. (*See* Leckie Decl. ¶¶ 5– 7, 11.) When conducting the work Plaintiff alleged caused emissions, Lockheed Martin acted under this delegation of governmental authority. The government had direct insight and oversight into the materials used in performance of these contracts, and it required that work be done according to strict specifications. (*Id.* ¶¶ 6–7, 11.) The government also remained involved with the manufacturing by, among other things, maintaining a presence at SLRC, providing equipment, and inspecting the facility and final products. (*Id.* ¶ 9.) Finally, Lockheed Martin complied with the government's instructions and federal law when engaging in work on its behalf. (*Id.* ¶ 6)

50. Because the government validly conferred authority on Lockheed Martin to act on its behalf, Lockheed Martin followed the government's instructions, and the government would be immune from suit for these alleged actions, Lockheed Martin asserts a colorable derivative sovereign immunity defense.

## CONCLUSION

51. On the grounds set forth above, Lockheed Martin removes this case under the federal officer removal statute, 28. U.S.C. § 1442(a)(1), which affords Lockheed Martin a right to have the claims against it resolved in federal court.

[*Signatures and certificates of counsel below.*]

Dated: September 23, 2021

Francis A. Citera*
citeraf@gtlaw.com
Gretchen N. Miller*
millerg@gtlaw.com
**GREENBERG TRAURIG, LLP**
77 West Wacker Dr., Ste. 3100
Chicago, Illinois 60601
Telephone: (312) 456-6583
Facsimile: (312) 899-0320

*applications for special admission forthcoming*

Respectfully submitted,

/s/ David B. Weinstein
David B. Weinstein (FBN 604410)
weinsteind@gtlaw.com
Christopher Torres (FBN 0716731)
torresch@gtlaw.com
Ryan T. Hopper (FBN 0107347)
hopperr@gtlaw.com
Jillian M. Askren (FBN 121773)
askrenj@gtlaw.com
Raymond Jackson (FBN 1028350)
jacksonra@gtlaw.com
Christopher R. White (FBN 1022219)
whitech@gtlaw.com
**GREENBERG TRAURIG, P.A.**
101 E. Kennedy Blvd., Ste. 1900
Tampa, Florida 33602
Telephone: (813) 318-5700
Facsimile: (813) 318-5900

*Attorneys for Defendant Lockheed Martin Corporation*

## CERTIFICATE OF SERVICE

I certify that on September 23, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

/s/ David Weinstein
Attorney