IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.:_____

KARYN VANDESTREEK, as Personal Representative
of the ESTATE OF DANIEL VANDESTREEK, for and
on behalf of the Estate and Survivors thereof,

      Plaintiff,

v.

LOCKHEED MARTIN CORPORATION;
UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD.;
UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC;
and HSW ENGINEERING, INC.

      Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF

DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, hereinafter

("Plaintiff"), by and through the undersigned counsel, brings this Complaint against Defendants,

**LOCKHEED MARTIN CORPORATION; UNIVERSAL CITY DEVELOPMENT**

**PARTNERS, LTD.; UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC; and**

**HSW ENGINEERING, INC.** As grounds thereof, Plaintiff states:

### JURISDICTION AND VENUE

1.    This is a wrongful death action for damages in excess of Thirty Thousand Dollars

($30,000.00) exclusive of interest, costs, and attorney's fees.

1

2.      At all times material hereto, the decedent, Daniel Vandestreek ("Mr. Vandestreek") was a citizen of the state of Florida and a resident of Orange County, Florida.

3.      Mr. Vandestreek died on April 29, 2020, at the age of 43. Mr. Vandestreek was survived by:

    a.  His wife, Karyn Vandestreek, age 43, who has also been appointed as the Personal Representative of his Estate. A copy of the Letters of Administration are attached hereto as **Exhibit A**.

    b.  His daughter, Jessica Vandestreek, age 20

    c.  His daughter, Julie Vandestreek, age 18

4.      At all times material hereto, Defendant, **LOCKHEED MARTIN CORPORATION ("LOCKHEED"),** was and is a Foreign Profit Corporation, licensed to do business in the State of Florida, and which owned, operated, conducted, engaged in, and/or carried on a business or business venture located at 5600 Sand Lake Road, Orange County, Orlando, Florida ("the Sand Lake Road Complex" and/or "SLRC"). **LOCKHEED** has designated Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301, as its registered agent for service of process.

5.      At all times material hereto, Defendant, **UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. ("UCDP"),** was and is a Florida Limited Partnership, licensed to do business in the State of Florida, with its principal place of business at located at 1000 Universal Studios Plaza, Orlando, Florida 32819, which owned, operated, conducted, engaged in, and/or carried on a business or business venture in Orange County, Florida.  **UCDP** has designated CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324, as its registered agent for service of process.

6.      At all times material hereto, Defendant, **UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC ("UCPM"),[1]** was and is a  Foreign Limited Liability Company, licensed to do business in the State of Florida, which owned, operated, conducted, engaged in, and/or carried on a business or business venture in Orange County, Florida.  **UCPM** has designated Steve Boone, 1001 Avenida Del Circle, Venice, Florida 34285, as its registered agent for service of process.

7.      At all times material hereto, Defendant, **HSW ENGINEERING, INC., ("HSW"),** was and is a Florida for Profit Corporation licensed to do business in the State of  Florida, with its principal place of business located at 15711 Mapledale Blvd., Suite B, Tampa, Florida 33624, which operated, conducted, engaged in, and/or carried on a business or business venture in Orange County, Florida. **HSW** has designated Kenneth W. Watson, 713 New York Avenue, Palm Harbor, Florida 34683, as its registered agent for service of process.

8.      The events, acts, errors, and/or omissions, which are the subject matter of this Complaint, occurred in Orange County, Florida.

## STATEMENT OF FACTS

9.      For nearly a decade,  Daniel Vandestreek owned and operated Orlando Outdoors, a landscape nursery business located at 5001 Sand Lake Road, Orlando, Florida 32819, approximately 600 feet directly across from the Sand Lake Road Complex. The nature of Mr. Vandestreek's business involved the design, installation, and maintenance of turf grasses, mulching products and plants which required him to work onsite and outdoors 7 days a week 14 hours a day—in close proximity to the Sand Lake Road Complex.

---

[1] Defendants Universal City Development Partners, Ltd. and Universal City Property Management III, LLC will be referred to collectively as "Universal" and/or "the Universal Defendants"

10. Unbeknownst to him, Daniel Vandestreek was subjected and exposed to highly toxic contaminants and volatile organic compounds from the Sand Lake Road Complex as a result of the Defendants' mishandling, storing, using, generating, treating, emitting, disposing, and discharging of hazardous chemical substances and volatile organic compounds, including but not limited to, benzene, cadmium,  tetrachloroethene (PCE), trichloroethylene (TCE), vinyl chloride, 1,4-dioxane, perfluorooctanesulfonic acid (PFOS), and perfluorooctanoic acid (PFOA).

11. As a direct and proximate result of this exposure, on October 23, 2018, Mr. Vandestreek was diagnosed with Grade IV Glioblastoma at the age of 41 and died on April 29, 2020, at the age of 43.

## THE CONTAMINATION AT THE SAND LAKE ROAD COMPLEX

### I.   *The Original Contamination*

12. In December of 1957, Lockheed Martin[2] opened its Orlando Division plant located at 5600 Sand Lake Road, and production began on missile projects such as Pershing, Bullpup, Lacrosse, Sprint, and Hellfire. Between 1958 and 1996, Copperhead, Hellfire, and Pershing missiles were produced and tested.

13. The site, known as the Sand Lake Road Complex ("SLRC"),  first began showing signs of groundwater pollution in the early 1980s. Remediations began in 1984. At the time, contamination stemmed from six closed landfills where molten metals, chemical sludges, solvents, and solid wastes such as construction debris, dummy missiles, grenades, and electroplating sludges were dumped.  Pollution was also found at other sites, including its microelectronics building, launch testing area and hazardous-waste storage area, which involved 21 toxic metals and

---

[2] Originally Glenn L. Martin Company. Due to a merger in 1961, the Martin Company became Martin Marietta and another merger in 1995 led to its new name – Lockheed Martin.

industrial solvents, including trichloroethylene. Groundwater sample reports from December 1983 showed concentrations of 723 parts per billion of solvents, including trichloroethylene.

## II.   *The Remediation at Issue*

14.     Prior to April 29, 2020, the Defendants had been and continue to be engaged in remediation efforts to treat the contamination at the Sand Lake Road Complex stemming from the original groundwater and soil contamination caused by Lockheed's activities. The manner in which the Defendants attempted to remediate only increased the risk of exposure to toxic contaminants to others living and working nearby, including Daniel Vandestreek.

15.     The Defendants' efforts included installation of numerous air stripping towers, soil vapor extraction systems, and air sparging systems to separate volatile organic compounds from the soil and groundwater at the SLRC.   However, these air strippers, air sparge systems, and soil vapor extraction systems do not destroy contaminants—rather they become gaseous, i.e., air borne. The Defendants negligently and recklessly failed to contain these toxic gases and instead caused, allowed, authorized, and expelled concentrated amounts of these toxic gases directly into the air breathed by others in the surrounding area, and specifically Daniel Vandestreek. These actions ultimately and inevitably increased the risk and amount of exposure to harmful toxins to others in the surrounding area, including Daniel Vandestreek.

16.     By venting toxic gases directly into the air, at low heights, the Defendants carelessly and recklessly unearthed high levels of toxic contamination present below ground surface, concentrated the contamination into potent and dangerous gases, and injected the contamination directly into the air supply for those persons in the surrounding area of the SLRC, and specifically for Daniel Vandestreek. As a consequence, Defendants recklessly subjected and exposed Daniel Vandestreek to volatile organic compounds, causing him to inhale concentrated amounts of these

5

volatile organic compounds emitted from the Air Stripping Towers, Soil Vapor Extraction Systems, and Air Sparging Systems at the SLRC.

17. The Defendants further increased the risk and amount of exposure by using contaminated groundwater for spray irrigation, causing underground contaminants to make contact with air, vaporize, be carried offsite with winds, and ultimately inhaled by others, and specifically, by Daniel Vandestreek.

18. The Defendants deliberate indifference to human health caused persons in the vicinity of the SLRC, and specifically Daniel Vandestreek, to inhale, ingest, and come into dermal contact with contaminated soils from the SLRC, airborne contaminants resulting from the volatilization of contaminated soil and groundwater at the SLRC, contaminants carried offsite through groundwater migration, and contaminants generated and released by the continued operations at the Sand Lake Road Complex.

19. While remediation efforts were ongoing for over the last two decades, Lockheed simultaneously continued its operations at the Sand Lake Road Complex, resulting in the continued release of additional toxic contaminants and toxic waste, which further increased and exacerbated Daniel Vandestreek's exposure to these harmful chemicals.

20. The collective Defendants, by and through their agents, employees, and servants acting on its behalf, individually, or in combination, negligently, recklessly, and knowingly created and contributed to the conditions established in the preceding paragraphs and allowed the conditions to exist.

21. By creating and contributing to the toxic and harmful conditions enumerated in the preceding paragraphs and allowing and causing those toxic and harmful conditions to exist, the Defendants created and/ allowed a foreseeable zone of risk and physical harm to exist, posing a

general threat of harm toward persons in the surrounding areas of the Sand Lake Road Complex. As a person working in the proximity of the Sand Lake Road Complex, Daniel Vandestreek was a person placed in this foreseeable zone of risk and physical harm.

## COUNT I– STRICT LIABILITY AGAINST
## LOCKHEED MARTIN CORPORATION FOR ULTRAHAZARDOUS ACTIVITY

22.     Plaintiff realleges paragraphs 1-4 and 8-21, as if restated verbatim herein.

23.     At all times material,  LOCKHEED owned and operated the Sand Lake Road Complex located at 5600 Sand Lake Road, Orlando, Florida 32819. LOCKHEED's operations involve the manufacturing of heavy weaponry and artillery, wherein it handled, stored, utilized, generated, emitted, discharged, and disposed of highly toxic contaminants and volatile organic compounds. These operations continue to this day, and result in the generation and emission of numerous hazardous air pollutants and volatile organic compounds each year. Because of its operations at the SLRC, LOCKHEED is classified as a Large Quantity Generator of Hazardous Waste and as Treaters, Storers, and Disposers of hazardous waste.

24.     LOCKHEED's handling, storage, use, generation, emittance, disposal, and discharge of hazardous chemical substances and volatile organic compounds, including but not limited to, benzene, cadmium,  tetrachloroethene (PCE), trichloroethylene (TCE), vinyl chloride, 1,4-dioxane, perfluorooctanesulfonic acid (PFOS), and perfluorooctanoic acid (PFOA),  to nearby residents, communities, workers, and business owners, is and was an ultrahazardous activity as defined by Florida law because:

> a.  it created a high degree of risk of harm to others, and particularly to Daniel Vandestreek, which could not be eliminated by the exercise of reasonable care;
>
> b.  it created a risk involving a likelihood that the harm threatened by Lockheed's activities would be great, and which could not be eliminated by the exercise of reasonable care;

7

    c.  it was not a matter of common usage; and

    d.  it was inappropriate to handle, store, use, generate, dispose, and emit highly toxic contaminants and volatile organic compounds near populated areas in that it constituted a nonnatural use of the SLRC which imposed an unusual and extraordinary risk of harm to Daniel Vandestreek as well as other persons and properties in the vicinity.

25.    Because these activities are ultrahazardous, LOCKHEED is strictly liable for any injuries proximately resulting therefrom.

26.    LOCKHEED's ultrahazardous activities described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

27.    As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

28.    Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

    a.  KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

    b.  JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

29.    These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendant, **LOCKHEED MARTIN CORPORATION**, for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT II– STRICT LIABILITY PURSUANT TO FLA. STAT. §376.313 AGAINST LOCKHEED MARTIN CORPORATION

30.　　Plaintiff realleges paragraphs 1-4 and 8-29, as if restated verbatim herein.

31.　　At all times material,  LOCKHEED owned and operated the Sand Lake Road Complex located at 5600 Sand Lake Road, Orlando, Florida 32819. LOCKHEED's operations involve the manufacturing of heavy weaponry and artillery, wherein it handled, stored, utilized, generated, emitted, discharged, and disposed of highly toxic contaminants and volatile organic compounds.

32.　　In doing so,  LOCKHEED caused, allowed, and authorized the discharge of  highly toxic contaminants, hazardous substances, solvents, and volatile organic compounds into the soil, groundwater, and air supply, and created polluted conditions prohibited by Fla. Stat. §§376.30, 376.302 *et seq*.

33.　　As a direct and proximate result of LOCKHEED's unlawful discharge of hazardous substances in violation of §§376.30, 376.302 *et seq.,* caused persons in the vicinity of the SLRC, and specifically, Daniel Vandestreek, to inhale, ingest, and come into dermal contact with contaminated soils from the SLRC, airborne contaminants resulting from the volatilization of contaminated soil and groundwater at the SLRC, contaminants carried offsite through groundwater migration, and contaminants generated and released by the continued operations at the Sand Lake Road Complex.

9

34.     Pursuant to §376.313, LOCKHEED is strictly liable for all damages resulting from its unlawful discharge and polluted conditions that it subjected and exposed Daniel Vandestreek to.

35.     LOCKHEED's unlawful discharge and polluted conditions described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

36.     As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

37.     Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

   a.   KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

   b.   JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

38.     These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

   **WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendant, **LOCKHEED MARTIN CORPORATION**, for damages,

costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT III– NEGLIGENCE OF DEFENDANT LOCKHEED MARTIN CORPORATION

39.     Plaintiff realleges paragraphs 1-4 and 8-38, as if restated verbatim herein.

40.     At all times material,  LOCKHEED owned and operated the Sand Lake Road Complex located at 5600 Sand Lake Road, Orlando, Florida 32819. LOCKHEED's operations involve the manufacturing of heavy weaponry and artillery, wherein it handled, stored, utilized, generated, emitted, discharged, and disposed of highly toxic contaminants and volatile organic compounds. Because of its operations at the SLRC, LOCKHEED is classified as a Large Quantity Generator of Hazardous Waste and as Treaters, Storers, and Disposers of hazardous waste.

41.     LOCKHEED, as the owner and operator of a large hazardous waste generator, treatment, storage, and disposal facility, by and through its agents, employees, and servants acting on its behalf, was under a duty to exercise due care in the ownership and operation of its large hazardous waste generator, treatment, storage, and disposal facility, and was under a duty to comply with all laws and regulations relating to the generation, treatment, storage, and disposal of hazardous waste, so as to ensure that the generation, treatment, storage, and disposal did not harm the public health or the environment.

42.     LOCKHEED owed persons a duty to ensure that hazardous chemicals and substances, including but not limited to, benzene, cadmium,  tetrachloroethene (PCE), trichloroethylene (TCE), vinyl chloride, 1,4-dioxane, perfluorooctanesulfonic acid (PFOS), and perfluorooctanoic acid (PFOA), were not discharged, released, vaporized, and emitted  into the soil, groundwater, and air supply for those persons in the surrounding area of the SLRC.

11

43.     LOCKHEED owed persons within the foreseeable zone of risk a duty to act with reasonable care in taking any and all measures to lessen the risk and/or to act with reasonable care to see that sufficient precautions were taken to protects others from the harm that the risk posed.

44.     LOCKHEED owed persons within the foreseeable zone of risk a duty to warn of dangerous and ultrahazardous conditions, which LOCKHEED created and knew about, but which were not readily apparent to someone, who could get injured.

45.     LOCKHEED, breached its duty of reasonable care owed to foreseeable persons in the surrounding area of the SLRC, including Daniel Vandestreek, by intentionally, knowingly, negligently, carelessly, and recklessly:

    a.  causing, allowing, and authorizing the discharge, release, vaporization and emittance of harmful levels of toxic and hazardous chemicals and substances, including but not limited to, benzene, cadmium, PCE, TCE, vinyl chloride, 1,4-dioxane, PFOS, and PFOAs from the SLRC to the soil, groundwater, and air supply in the surrounding area of the SLRC;

    b.  utilizing a remediation methodology that failed to contain toxic gases and instead expelled concentrated amounts of toxic gases directly into the air breathed by others in the surrounding area;

    c.  installing, operating, constructing, modifying, and expanding stationary sources of air and water pollution at the SLRC;

    d.  failing to take steps to reduce or eliminate the release of harmful levels of toxic and hazardous chemicals and substances from the SLRC;

    e.  failing to reduce or eliminate the risk of exposure of contaminants to others in the surrounding area;

    f.  failing to reduce or eliminate the threat of migration of the contaminants from the SLRC to the surrounding area;

    g.  failing to appropriately handle, treat, and dispose of extracted contaminated groundwater;

    h.  causing, allowing, or authorizing the exceedance of hazardous air pollutants sitewide at the SLRC;

    i.   failing to monitor and manage the toxic and hazardous substances that it utilized, generated, treated, stored, and disposed of in a manner that caused these toxic and hazardous chemicals and substances to be further released and emitted into the soil, groundwater, and air supply;

    j.   utilizing and operating malfunctioning treatment systems resulting in the emission of toxic and hazardous chemicals and substances from the SLRC to the surrounding areas;

    k.   failing to install closed loop treatment technologies to contain toxic and hazardous chemicals, substances, and wastes properly and adequately in sealed containers;

    l.   failing to implement proper protocols and procedures to reduce or eliminate the risk of spills, releases, and discharges of toxic and hazardous chemicals and substances; and

    m.  failing to adequately inform and warn persons working and living in proximity to the SLRC of the release, discharge, and emittance of toxic and hazardous chemicals and substances, and the extent of those hazardous toxins being released, discharged, and emitted from the SLRC.

46.    As a result of LOCKHEED's negligent and careless conduct, as described above, Daniel Vandestreek was subjected and exposed to, inhaled, ingested, and dermally contacted numerous toxins and hazardous waste, chemicals, and substances released, discharged, and emitted from the SLRC.

47.    LOCKHEED's negligence and carelessness described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

48.    LOCKHEED was clearly aware that the toxic wastes and hazardous chemicals and substances it handled, stored, utilized, generated, emitted, discharged, and disposed of at the SLRC were highly carcinogenic, capable of causing and/or contributing to various cancers and debilitating diseases, and were extremely harmful to humans. LOCKHEED was also aware that the manner in which it was handling, storing, utilizing, generating, emitting, discharging, and

disposing of hazardous substances would, and did, expose other persons in the surrounding area, including Daniel Vandestreek, to harmful levels of toxic wastes and hazardous chemicals and substances. LOCKHEED knew that its operations were subjecting persons in the surrounding area of the SLRC, including Daniel Vandestreek, to toxic wastes and hazardous chemicals and substances, and despite this knowledge,  continued its operations knowing it was posing a high degree of risk to persons in the area, including Daniel Vandestreek.

49.     In light of the relevant circumstances as described herein, LOCKHEED's conduct was intentional, grossly negligent, reckless, and wanting in care that it constituted a conscious disregard and indifference to the life, safety, and rights of persons, including Daniel Vandestreek, who were exposed and subjected to its conduct. LOCKHEED's  reckless, willful, and wanton conduct is sufficient for the imposition of punitive damages under Fla. Stat. §768.72. As required therein, Plaintiff intends to show by proffer the reasonable basis for a recovery of such damages at a later point in time.

50.     As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

51.     Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

> a. KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;
>
> b. JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental

pain and suffering in the past and future, and loss of support and services in the past and future.

52.     These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendant, **LOCKHEED MARTIN CORPORATION**, for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT IV– NEGLIGENCE *PER SE* AGAINST LOCKHEED MARTIN CORPORATION

53.     Plaintiff realleges paragraphs 1-4 and 8-52, as if restated verbatim herein.

54.     LOCKHEED's negligent and careless conduct, as described above, was in violation of  Fla. Stat. §§386.01, 386.041, *et seq.,* when it permitted and caused the emission of gases and hazardous substances, which are harmful to human life. LOCKHEED's conduct caused persons in the vicinity of the SLRC, and specifically Daniel Vandestreek, to inhale, ingest, and come into dermal contact with contaminated soils from the SLRC, airborne contaminants resulting from the volatilization of contaminated soil and groundwater at the SLRC, contaminants carried offsite through groundwater migration, and contaminants generated and released by the continued operations at the Sand Lake Road Complex. By doing so, LOCKHEED maintained a nuisance injurious to health, in direct violation of §386.051.

55.     Fla. Stat.  §§386.01, 386.041, *et seq.,* was designed to prohibit any individual, organization, or corporation, from creating, keeping, or maintaining a nuisance injurious to the

health or lives of individuals, including conditions that have the mere possibility of injury, or by which or through which, directly or indirectly, disease may be caused.

56.     Daniel Vandestreek is a member of the class of people these statutes were designed to protect, and the harm suffered is of the type that these statutes were designed to prevent. LOCKHEED's violations of these statutes constitute negligence *per se*.

57.     LOCKHEED's violations described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

58.     As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

59.     Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

        a.  KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

        b.  JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

60.     These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof,

demands judgment against Defendant, **LOCKHEED MARTIN CORPORATION**, for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT V– STRICT LIABILITY AGAINST UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. AND UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC FOR ULTRAHAZARDOUS ACTIVITY

61.     Plaintiff realleges paragraphs 1-3, 5-6, and 8-21, as if restated verbatim herein.

62.     At all times material, UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. and UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC (collectively referred to as "UNIVERSAL") owned and operated the Sand Lake Road Complex located at 5600 Sand Lake Road, Orlando, Florida 32819. In 1998, UNIVERSAL purchased approximately 2,000 acres of contaminated land at the SLRC. In doing so, UNIVERSAL  assumed responsibility in conducting corrective measures of the contaminated land it purchased.  Because of its operations at the SLRC, UNIVERSAL is classified as a Hazardous Waste Treaters, Storers, and Disposers facility.

63.     UNIVERSAL's handling, storage, use, generation, emittance, disposal, and discharge of hazardous chemical substances and volatile organic compounds, including but not limited to, benzene, cadmium,  tetrachloroethene (PCE), trichloroethylene (TCE), vinyl chloride, 1,4-dioxane, perfluorooctanesulfonic acid (PFOS), and perfluorooctanoic acid (PFOA),  to nearby residents, communities, workers, and business owners, is and was an ultrahazardous activity as defined by Florida law because:

      a.  it created a high degree of risk of harm to others, and particularly to Daniel Vandestreek, which could not be eliminated by the exercise of reasonable care;

      b.  it created a risk involving a likelihood that the harm threatened by Universal's activities would be great, and which could not be eliminated by the exercise of reasonable care;

c. it was not a matter of common usage; and

d. it was inappropriate to handle, store, use, generate, dispose, and emit highly toxic contaminants and volatile organic compounds near populated areas in that it constituted a nonnatural use of the SLRC which imposed an unusual and extraordinary risk of harm to Daniel Vandestreek as well as other persons and properties in the vicinity.

64. Because these activities are ultrahazardous, UNIVERSAL  is strictly liable for any injuries proximately resulting therefrom.

65. UNIVERSAL's ultrahazardous activities described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

66. As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

67. Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

a. KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

b. JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

68. These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

18

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendants, **UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. and UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC**, for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT VI– STRICT LIABILITY PURSUANT TO FLA. STAT. §376.313 AGAINST UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. AND UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC

69.     Plaintiff realleges paragraphs 1-3, 5-6, 8-21, and 61-68, as if restated verbatim herein.

70.     At all times material, UNIVERSAL owned and operated 2,000 acres of contaminated land at the Sand Lake Road Complex located at 5600 Sand Lake Road, Orlando, Florida 32819. UNIVERSAL's operations involve handling, storing, utilizing, generating, emitting, discharging, and disposing of highly toxic contaminants and volatile organic compounds.

71.     In doing so, UNIVERSAL caused, allowed, and authorized the discharge of highly toxic contaminants, hazardous substances, solvents, and volatile organic compounds into the soil, groundwater, and air supply, and created polluted conditions prohibited by Fla. Stat. §§376.30, 376.302 *et seq*.

72.     As a direct and proximate result of UNIVERSAL's unlawful discharge of hazardous substances in violation of §§376.30, 376.302 *et seq.,* caused persons in the vicinity of the SLRC, and specifically, Daniel Vandestreek, to inhale, ingest, and come into dermal contact with contaminated soils from the SLRC, airborne contaminants resulting from the volatilization of contaminated soil and groundwater at the SLRC, contaminants carried offsite through groundwater

19

migration, and contaminants generated and released by the continued operations at the Sand Lake Road Complex.

73.     Pursuant to §376.313, UNIVERSAL is strictly liable for all damages resulting from its unlawful discharge and polluted conditions that it subjected and exposed Daniel Vandestreek to.

74.     UNIVERSAL's unlawful discharge and polluted conditions described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

75.     As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

76.     Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

   a.   KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

   b.   JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

77.     These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

   **WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof,

demands judgment against Defendants, **UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. and UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC**, for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

**COUNT VII– NEGLIGENCE OF DEFENDANTS
UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. AND
UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC**

78.     Plaintiff realleges paragraphs 1-3, 5-6, 8-21, and 61-77, as if restated verbatim herein.

79.     At all times material, UNIVERSAL owned and operated 2,000 acres of contaminated land at the Sand Lake Road Complex located at 5600 Sand Lake Road, Orlando, Florida 32819. UNIVERSAL's operations involve handling, storing, utilizing, generating, emitting, discharging, and disposing of highly toxic contaminants and volatile organic compounds. Because of its operations at the SLRC, UNIVERSAL is classified as a Hazardous Waste Treaters, Storers, and Disposers facility.

80.     UNIVERSAL, as the owner and operator of a hazardous waste treatment, storage, and disposal facility, by and through its agents, employees, and servants acting on its behalf, was under a duty to exercise due care in the ownership and operation of the hazardous waste treatment, storage, and disposal facility, and was under a duty to comply with all laws and regulations relating to the generation, treatment, storage, and disposal of hazardous waste, so as to ensure that the generation, treatment, storage, and disposal did not harm the public health or the environment.

81.     UNIVERSAL owed persons a duty to ensure that hazardous chemicals and substances, including but not limited to, benzene, cadmium,    tetrachloroethene (PCE), trichloroethylene (TCE), vinyl chloride, 1,4-dioxane, perfluorooctanesulfonic acid (PFOS), and

perfluorooctanoic acid (PFOA), were not discharged, released, vaporized, and emitted into the soil, groundwater, and air supply for those persons in the surrounding area of the SLRC.

82.     UNIVERSAL owed persons within the foreseeable zone of risk a duty to act with reasonable care in taking any and all measures to lessen the risk and/or to act with reasonable care to see that sufficient precautions were taken to protects others from the harm that the risk posed.

83.     UNIVERSAL owed persons within the foreseeable zone of risk a duty to warn of dangerous and ultrahazardous conditions, which UNIVERSAL created and knew about, but which were not readily apparent to someone, who could get injured.

84.     UNIVERSAL breached its duty of reasonable care owed to foreseeable persons in the surrounding area of the SLRC, including Daniel Vandestreek, by intentionally, knowingly, negligently, carelessly, and recklessly:

    a.  causing, allowing, and authorizing the discharge, release, vaporization and emittance of harmful levels of toxic and hazardous chemicals and substances, including but not limited to, benzene, cadmium, PCE, TCE, vinyl chloride, 1,4-dioxane, PFOS, and PFOAs from the SLRC to the soil, groundwater, and air supply in the surrounding area of the SLRC;

    b.  utilizing a remediation methodology that failed to contain toxic gases and instead expelled concentrated amounts of toxic gases directly into the air breathed by others in the surrounding area;

    c.  installing, operating, constructing, modifying, and expanding stationary sources of air and water pollution at the SLRC;

    d.  failing to take steps to reduce or eliminate the release of harmful levels of toxic and hazardous chemicals and substances from the SLRC;

    e.  failing to reduce or eliminate the risk of exposure of contaminants to others in the surrounding area;

    f.  failing to reduce or eliminate the threat of migration of the contaminants from the SLRC to the surrounding area;

    g.  failing to appropriately handle, treat, and dispose of extracted contaminated groundwater;

h. causing, allowing, or authorizing the exceedance of hazardous air pollutants sitewide at the SLRC;

i. failing to monitor and manage the toxic and hazardous substances that it utilized, generated, treated, stored, and disposed of in a manner that caused these toxic and hazardous chemicals and substances to be further released and emitted into the soil, groundwater, and air supply;

j. utilizing and operating malfunctioning treatment systems resulting in the emission of toxic and hazardous chemicals and substances from the SLRC to the surrounding areas;

k. failing to install closed loop treatment technologies to contain toxic and hazardous chemicals, substances, and wastes properly and adequately in sealed containers;

l. failing to implement proper protocols and procedures to reduce or eliminate the risk of spills, releases, and discharges of toxic and hazardous chemicals and substances; and

m. failing to adequately inform and warn persons working and living in proximity to the SLRC of the release, discharge, and emittance of toxic and hazardous chemicals and substances, and the extent of those hazardous toxins being released, discharged, and emitted from the SLRC.

85.    As a result of UNIVERSAL's negligent and careless conduct, as described above, Daniel Vandestreek was subjected and exposed to, inhaled, ingested, and dermally contacted numerous toxins and hazardous waste, chemicals, and substances released, discharged, and emitted from the SLRC.

86.    UNIVERSAL's negligence and carelessness described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

87.    UNIVERSAL was clearly aware that the toxic wastes and hazardous chemicals and substances it handled, stored, utilized, generated, emitted, discharged, and disposed of at the SLRC were highly carcinogenic, capable of causing and/or contributing to various cancers and

debilitating diseases, and were extremely harmful to humans. UNIVERSAL was also aware that the manner in which it was handling, storing, utilizing, generating, emitting, discharging, and disposing of hazardous substances would, and did, expose other persons in the surrounding area, including Daniel Vandestreek, to harmful levels of toxic wastes and hazardous chemicals and substances. UNIVERSAL knew that its operations were subjecting persons in the surrounding area of the SLRC, including Daniel Vandestreek, to toxic wastes and hazardous chemicals and substances, and despite this knowledge, continued its operations knowing it was posing a high degree of risk to persons in the area, including Daniel Vandestreek.

88.     In light of the relevant circumstances as described herein, UNIVERSAL's conduct was intentional, grossly negligent, reckless, and wanting in care that it constituted a conscious disregard and indifference to the life, safety, and rights of persons, including Daniel Vandestreek, who were exposed and subjected to its conduct. UNIVERSAL's reckless, willful, and wanton conduct is sufficient for the imposition of punitive damages under Fla. Stat. §768.72.  As required therein, Plaintiff intends to show by proffer the reasonable basis for a recovery of such damages at a later point in time.

89.     As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

90.     Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

a.  KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

24

b. JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

91.     These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendants, **UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. and UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC**, for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT VIII– NEGLIGENCE *PER SE* AGAINST UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. AND UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC

92.     Plaintiff realleges paragraphs 1-3, 5-6, 8-21, and 61-91, as if restated verbatim herein.

93.     UNIVERSAL's negligent and careless conduct, as described above, was in violation of  Fla. Stat. §§386.01, 386.041, *et seq.,* when it permitted and caused the emission of gases and hazardous substances, which are harmful to human life. UNIVERSAL's conduct caused persons in the vicinity of the SLRC, and specifically Daniel Vandestreek, to inhale, ingest, and come into dermal contact with contaminated soils from the SLRC, airborne contaminants resulting from the volatilization of contaminated soil and groundwater at the SLRC, contaminants carried offsite through groundwater migration, and contaminants generated and released by the continued

operations at the Sand Lake Road Complex. By doing so, UNIVERSAL maintained a nuisance injurious to health, in direct violation of §386.051.

94.     Fla. Stat. §§386.01, 386.041, *et seq.*, was designed to prohibit any individual, organization, or corporation, from creating, keeping, or maintaining a nuisance injurious to the health or lives of individuals, including conditions that have the mere possibility of injury, or by which or through which, directly or indirectly, disease may be caused.

95.     Daniel Vandestreek is a member of the class of people these statutes were designed to protect, and the harm suffered is of the type that these statutes were designed to prevent. UNIVERSAL's violations of these statutes constitute negligence *per se.*

96.     UNIVERSAL's violations described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

97.     As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

98.     Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

    a.  KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

    b.  JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

99.     These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendants, **UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. and UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC**, for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT IX– STRICT LIABILITY AGAINST
## HSW ENGINEERING, INC. FOR ULTRAHAZARDOUS ACTIVITY

100.     Plaintiff realleges paragraphs 1-3 and 7-21, as if restated verbatim herein.

101.     At all times material, HSW Engineering was hired by Lockheed and the Universal Defendants to conduct corrective action and remediation measures at the contaminated  Sand Lake Road Complex located at 5600 Sand Lake Road, Orlando, Florida 32819. Specifically, HSW was hired to conduct contamination assessments, environmental media monitoring and treatment, site rehabilitation and remediation at the SLRC. As part of its work, HSW was also responsible for monitoring, supervising, controlling, instructing, maintaining,  performing, operating, testing, installing, and managing the groundwater, soil, and air remediation and treatment systems in place at the SLRC.

102.     HSW's responsibilities and operations in monitoring, supervising,  controlling, handling, storing, using, generating, treating, emitting, disposing, and discharging of hazardous chemical substances and volatile organic compounds, including but not limited to, benzene, cadmium,  tetrachloroethene (PCE), trichloroethylene (TCE),  vinyl chloride, 1,4-dioxane, perfluorooctanesulfonic acid (PFOS), and perfluorooctanoic acid (PFOA), to nearby residents,

27

communities, workers, and business owners, is and was an ultrahazardous activity as defined by Florida law because:

    a.   it created a high degree of risk of harm to others, and particularly to Daniel Vandestreek, which could not be eliminated by the exercise of reasonable care;

    b.   it created a risk involving a likelihood that the harm threatened by HSW's activities would be great, and which could not be eliminated by the exercise of reasonable care;

    c.   it was not a matter of common usage; and

    d.   it was inappropriate to handle, store, use, generate, dispose, and emit highly toxic contaminants and volatile organic compounds near populated areas in that it constituted a nonnatural use of the SLRC which imposed an unusual and extraordinary risk of harm to Daniel Vandestreek as well as other persons and properties in the vicinity.

103.    Because these activities are ultrahazardous, HSW is strictly liable for any injuries proximately resulting therefrom.

104.    HSW's ultrahazardous activities described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

105.    As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

106.    Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

    a.   KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

28

      b.   JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

107.    These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendant, **HSW ENGINEERING, INC.**, for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT X– STRICT LIABILITY PURSUANT TO FLA. STAT. §376.313 AGAINST  HSW ENGINEERING, INC.

108.    Plaintiff realleges paragraphs 1-3, 7-21, and 100-107, as if restated verbatim herein.

109.    At all times material, HSW Engineering was hired by Lockheed and the Universal Defendants to conduct corrective action and remediation measures at the contaminated  Sand Lake Road Complex located at 5600 Sand Lake Road, Orlando, Florida 32819. HSW's responsibilities and operations involved monitoring, supervising, controlling, instructing, maintaining, performing, operating, testing, installing, and managing the groundwater, soil, and air remediation and treatment systems in place at the SLRC. HSW's operations also involved monitoring, supervising, controlling,  handling, storing, using, generating, treating, emitting, disposing, and discharging of hazardous chemical substances and volatile organic compounds.

110.    In doing so,  HSW caused, allowed, and authorized the discharge of  highly toxic contaminants, hazardous substances, solvents, and volatile organic compounds into the soil,

groundwater, and air supply, and created polluted conditions prohibited by Fla. Stat. §§376.30, 376.302 *et seq.*

111.    As a direct and proximate result of HSW's unlawful discharge of hazardous substances in violation of §§376.30, 376.302 *et seq.*, caused persons in the vicinity of the SLRC, and specifically, Daniel Vandestreek, to inhale, ingest, and come into dermal contact with contaminated soils from the SLRC, airborne contaminants resulting from the volatilization of contaminated soil and groundwater at the SLRC, contaminants carried offsite through groundwater migration, and contaminants generated and released by the continued operations at the Sand Lake Road Complex.

112.    Pursuant to §376.313, HSW is strictly liable for all damages resulting from its unlawful discharge and polluted conditions that it subjected and exposed Daniel Vandestreek to.

113.    HSW's unlawful discharge and polluted conditions described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

114.    As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

115.    Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

> a.  KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;
>
> b.  JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss

of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

116.    These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendant, **HSW ENGINEERING, INC.,** for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT XI– NEGLIGENCE OF DEFENDANT, HSW ENGINEERING, INC.

117.    Plaintiff realleges paragraphs 1-3, 7-21, and 100-116, as if restated verbatim herein.

118.    At all times material, HSW was responsible for conducting corrective action and remediation measures at the contaminated Sand Lake Road Complex located at 5600 Sand Lake Road, Orlando, Florida 32819. HSW's operations involved monitoring, supervising, controlling, instructing, maintaining, performing, operating, testing, installing, and managing the groundwater, soil, and air remediation and treatment systems in place at the SLRC. HSW's operations also involved monitoring, supervising, controlling, handling, storing, using, generating, treating, emitting, disposing, and discharging of hazardous chemical substances and volatile organic compounds.

119.    HSW, as the entity responsible for conducting and implementing corrective action and remediation measures at the contaminated SLRC, by and through its agents, employees, and servants acting on its behalf, was under a duty to exercise due care in properly conducting and implementing remediation and treatment operations at the SLRC, and was under a duty to comply

31

with all laws and regulations relating to the operation, remediation, treatment, generation storage, and disposal of hazardous waste, so as to ensure that the operation, remediation, generation, treatment, storage, and disposal did not harm the public health or the environment.

120.    HSW owed persons a duty to ensure that hazardous chemicals and substances, including but not limited to, benzene, cadmium,  tetrachloroethene (PCE), trichloroethylene (TCE), vinyl chloride, 1,4-dioxane, perfluorooctanesulfonic acid (PFOS), and perfluorooctanoic acid (PFOA), were not discharged, released, vaporized, and emitted  into the soil, groundwater, and air supply for those persons in the surrounding area of the SLRC.

121.    HSW owed persons within the foreseeable zone of risk a duty to act with reasonable care in taking any and all measures to lessen the risk and/or to act with reasonable care to see that sufficient precautions were taken to protects others from the harm that the risk posed.

122.    HSW owed persons within the foreseeable zone of risk a duty to warn of dangerous and ultrahazardous conditions, which HSW created and knew about, but which were not readily apparent to someone, who could get injured.

123.    HSW owed persons a duty to exercise a reasonable degree of skill and care, as determined by the degree of skill and care ordinarily employed by persons responsible for operating, remediating, and treating contaminated sites, under similar conditions and under similar surrounding circumstances.

124.    HSW breached its duty of reasonable care owed to foreseeable persons in the surrounding area of the SLRC, including Daniel Vandestreek, by intentionally, knowingly, negligently, carelessly, and recklessly:

> a.  causing, allowing, and authorizing the discharge, release, vaporization and emittance of harmful levels of toxic and hazardous chemicals and substances, including but not limited to, benzene, cadmium,  PCE, TCE, vinyl chloride, 1,4-

32

dioxane, PFOS, and PFOAs from the SLRC to the soil, groundwater, and air supply in the surrounding area of the SLRC;

b.  utilizing a remediation methodology that failed to contain toxic gases and instead expelled concentrated amounts of toxic gases directly into the air breathed by others in the surrounding area;

c.  installing, operating, constructing, modifying, and expanding stationary sources of air and water pollution at the SLRC;

d.  failing to take steps to reduce or eliminate the release of harmful levels of toxic and hazardous chemicals and substances from the SLRC;

e.  failing to reduce or eliminate the risk of exposure of contaminants to others in the surrounding area;

f.  failing to reduce or eliminate the threat of migration of the contaminants from the SLRC to the surrounding area;

g.  failing to appropriately handle, treat, and dispose of extracted contaminated groundwater;

h.  causing, allowing, or authorizing the exceedance of hazardous air pollutants sitewide at the SLRC;

i.  failing to monitor and manage the toxic and hazardous substances that it utilized, generated, treated, stored, and disposed of in a manner that caused these toxic and hazardous chemicals and substances to be further released and emitted into the soil, groundwater, and air supply;

j.  utilizing and operating malfunctioning treatment systems resulting in the emission of toxic and hazardous chemicals and substances from the SLRC to the surrounding areas;

k.  failing to install closed loop treatment technologies to contain toxic and hazardous chemicals, substances, and wastes properly and adequately in sealed containers;

l.  failing to implement proper protocols and procedures to reduce or eliminate the risk of spills, releases, and discharges of toxic and hazardous chemicals and substances; and

m.  failing to adequately inform and warn persons working and living in proximity to the SLRC of the release, discharge, and emittance of toxic and hazardous chemicals and substances, and the extent of those hazardous toxins being released, discharged, and emitted from the SLRC.

125.    HSW's negligence and carelessness described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

126.    HSW was clearly aware that the toxic wastes and hazardous chemicals and substances it handled, stored, utilized, generated, emitted, discharged, and disposed of at the SLRC were highly carcinogenic, capable of causing and/or contributing to various cancers and debilitating diseases, and were extremely harmful to humans. HSW was also aware that the manner in which it was handling, storing, utilizing, generating, emitting, discharging, and disposing of hazardous substances would, and did, expose other persons in the surrounding area, including Daniel Vandestreek, to harmful levels of toxic wastes and hazardous chemicals and substances. HSW knew that its operations were subjecting persons in the surrounding area of the SLRC, including Daniel Vandestreek, to toxic wastes and hazardous chemicals and substances, and despite this knowledge, continued its operations knowing it was posing a high degree of risk to persons in the area, including Daniel Vandestreek.

127.    In light of the relevant circumstances as described herein, HSW's conduct was intentional, grossly negligent, reckless, and wanting in care that it constituted a conscious disregard and indifference to the life, safety, and rights of persons, including Daniel Vandestreek, who were exposed and subjected to its conduct. HSW's reckless, willful, and wanton conduct is sufficient for the imposition of punitive damages under Fla. Stat. §768.72. As required therein, Plaintiff intends to show by proffer the reasonable basis for a recovery of such damages at a later point in time.

128.    As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

129.    Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

> a.  KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

> b.  JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

130.    These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendant, **HSW ENGINEERING, INC.,** for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## COUNT XII– NEGLIGENCE *PER SE* AGAINST
## HSW ENGINEERING, INC.

131.    Plaintiff realleges paragraphs 1-3, 7-21, and 100-130, as if restated verbatim herein.

132.    HSW's negligent and careless conduct, as described above, was in violation of Fla. Stat. §§386.01, 386.041, *et seq.,* when it permitted and caused the emission of gases and hazardous substances, which are harmful to human life. HSW's conduct caused persons in the vicinity of the SLRC, and specifically Daniel Vandestreek, to inhale, ingest, and come into dermal contact with contaminated soils from the SLRC, airborne contaminants resulting from the volatilization of contaminated soil and groundwater at the SLRC, contaminants carried offsite through groundwater migration, and contaminants generated and released by the continued operations at the Sand Lake Road Complex. By doing so, HSW maintained a nuisance injurious to health, in direct violation of §386.051.

133.    Fla. Stat. §§386.01, 386.041, *et seq.,* was designed to prohibit any individual, organization, or corporation, from creating, keeping, or maintaining a nuisance injurious to the health or lives of individuals, including conditions that have the mere possibility of injury, or by which or through which, directly or indirectly, disease may be caused.

134.    Daniel Vandestreek is a member of the class of people these statutes were designed to protect, and the harm suffered is of the type that these statutes were designed to prevent. HSW's violations of these statutes constitute negligence *per se*.

135.    HSW's violations described above directly and proximately caused Daniel Vandestreek's death in that they directly, and in a natural and continuous sequence, produced or contributed to his death.

136.     As a direct and proximate result of the foregoing, the Estate and/or survivors have incurred damages for loss of net accumulations, medical, and funeral, including any other damages recoverable by the Estate and/or survivors by law or in equity.

137.     Further, as a direct and proximate result of the foregoing, which resulted in the death of their husband and father:

    a.  KARYN VANDESTREEK, as surviving spouse, has suffered and will continue to suffer the loss of her husband, loss of consortium, loss of companionship and protection, significant mental pain and suffering in the past and future, loss of support and services in the past and future, as well as medical and funeral expenses;

    b.  JESSICA VANDESTREEK and JULIE VANDESTREEK, as surviving children, have suffered and will continue to suffer the loss of their father, loss of parental companionship, instruction, guidance, comfort, significant mental pain and suffering in the past and future, and loss of support and services in the past and future.

138.     These losses, pain, and suffering are permanent and continuing, and they will continue to suffer these losses in the future.

**WHEREFORE,** Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, demands judgment against Defendant, **HSW ENGINEERING, INC.**, for damages, costs, interest, and such other relief as this Court deems just, and further demand a trial by jury on all issues triable as a matter of right.

## JURY DEMAND

Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, hereby demands a jury trial on all issues so triable.

**WHEREFORE**, Plaintiff, KARYN VANDESTREEK, as Personal Representative of the ESTATE OF DANIEL VANDESTREEK, for and on behalf of the Estate and Survivors thereof, hereby demands judgment against Defendants, **LOCKHEED MARTIN CORPORATION, UNIVERSAL CITY DEVELOPMENT PARTNERS, LTD. UNIVERSAL CITY PROPERTY MANAGEMENT III, LLC**, and **HSW ENGINEERING, INC.,** for damages, costs, interest, and such other relief as this Court deems just, and further, demands trial by jury on all issues so triable.

Dated this 10th day of August 2021.

*/s/Andrew F. Knopf*
**ANDREW F. KNOPF, ESQ.**
FBN: 658871
**BRENT R. BIGGER, ESQ.**
FBN: 823961
**BRIAN D. MURRY, ESQ.**
FBN: 0018321
**PAUL | KNOPF | BIGGER**
840 South Denning Drive, Suite 200
Winter Park, Florida 32789
Ph.: (407) 622-2111
Fax: (407) 622-2112
*Attorneys for Plaintiff*
andrew@pkblawfirm.com
brent@pkblawfirm.com
brian@pkblawfirm.com
abla@pkblawfirm.com

**Exhibit A**

**IN THE CIRCUIT COURT FOR ORANGE COUNTY,
FLORIDA                                    PROBATE DIVISION
IN RE:  ESTATE OF**

|  |  |
|---|---|
| **DANIEL PAUL
VANDESTREEK** | **File No.
2020 CP 003496 O**
**Division  01** |
| **Deceased.** |  |

## LETTERS OF ADMINISTRATION
### (single personal representative)

TO ALL WHOM IT MAY CONCERN

WHEREAS, Daniel Paul Vandestreek, a resident of ORANGE County, Florida, died on April 29, 2020, owning assets in the State of Florida, and

WHEREAS, Karyn Vandestreek has been appointed personal representative of the estate of the decedent and has performed all acts prerequisite to issuance of Letters of Administration in the estate,

NOW, THEREFORE, I, the undersigned circuit judge, declare Karyn Vandestreek duly qualified under the laws of the State of Florida to act as personal representative of the estate of Daniel Paul Vandestreek, deceased, with full power to administer the estate according to law; to ask, demand, sue for, recover and receive the property of the decedent; to pay the debts of the decedent as far as the assets of the estate will permit and the law directs; and to make distribution of the estate according to law.

ORDERED in Orlando, Orange County, Florida  on January 15, 2021.

eSigned by Lisa T. Munyon  01/15/2021 09:59:11 GcaZlF1O

LISA T. MUNYON Circuit Judge